IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3066-D

ROGER LEE DEAL, SR., )
)
        Plaintiff, )
)
v. ) **ORDER**
)
CAPE FEAR VALLEY HOSPITAL, )
)
        Defendant. )

On April 8, 2009, Roger Lee Deal, Sr. ("Deal" or "plaintiff"), a state inmate, filed this action against Cape Fear Valley Hospital ("the hospital") under 42 U.S.C. § 1983 [D.E. 1]. On October 26, 2009, the court reviewed Deal's complaint under 28 U.S.C. § 1915, dismissed as frivolous Deal's claims against the hospital, and directed Deal to particularize his claims [D.E. 9]. In response, Deal filed an amended complaint and named as new defendants the Head Medical Director of the North Carolina Department of Correction Utilization Review Board ("DOC URB"), Pender Correctional Institution ("PCI") physician Dr. Micklos,[1] PCI Nurse Padgett, and Maury Correctional Institution ("MCI") physician Dr. Leggett [D.E 10].

On August 12, 2010, defendants Leggett and Micklos filed motions to dismiss [D.E. 25, 27]. On August 23, 2010, defendant Head Medical Director of the DOC URB filed a motion to dismiss [D.E. 32]. On August 31, 2010, defendant Padgett filed a motion for judgment on the pleadings [D.E. 35]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the

---

[1] The complaint incorrectly identifies this defendant as "Micklas." Mem. Supp. Micklos Mot. Dismiss at 1.

court notified Deal about the motions to dismiss, the consequences of failing to respond, and the response deadlines [D.E. 30, 34]. On September 9 and 17, 2010, Deal responded in opposition to the motions [D.E. 37, 38]. As explained below, the motions to dismiss of defendants Leggett, Head Medical Director of the DOC URB, and Padgett are granted, and defendant Micklos's motion to dismiss is denied.

I.

In 2002, Deal was convicted of second-degree murder and incarcerated. Am. Compl. at 7. According to Deal, in "1993 or 1994," he "was struck by a pickup truck while he was on his riding lawn mower and was knoted [sic] 14 ft off the road." Id. at 3. Deal has required medical treatment for severe back pain ever since the accident. Id. at 3–34. Since Deal's 2002 incarceration, Deal has received various treatments within the DOC, including several surgeries, pain medication, antibiotics, MRIs, CT scans, x-rays, and a back brace. Id. at 7–21.

Just before his transfer to MCI, Deal was prescribed the pain reliever Oxycodone. Id. at 9. When his prescription ran out in August 2008, defendant Leggett would not renew the prescription, "even though plaintiff was in severe pain with his hip dislocating when he would try to walk . . . ." Id. at 9, 19. Deal then had hip replacement surgery in December 2008. Id. at 10. At some point, defendant Micklos "put the plaintiff on what he called a vacation from a narcotic and told the plaintiff at any time the pain was to [sic] much to bear, he would put the plaintiff back on his pain medication." Id. at 18. Deal repeatedly "put in sick-calls and filed grievances to be put back on his medication because of all the back pain and now severe hip pain[,] . . . [yet] Mickl[o]s still would not put the plaintiff back on his pain medication for 6 months." Id.

At PCI, an x-ray showed that Deal's hip had "broken hardwear [sic] and [he] was put in a wheelchair." Id. at 18. Defendant Padgett told Deal she needed the wheelchair for someone else

2

and took the wheelchair, forcing Deal "to walk of [sic] his hip in severe pain and with broken screws and worn out cup in his hip that would dislocate . . . ." Id. at 19. Deal alleges that defendant URB denied approval of several treatments and/or tests for plaintiff that were later approved, including an MRI and hip surgery. Id. at 6, 10–11.

## II.

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs .com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50. Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

To state a claim for inadequate medical care under section 1983, an incarcerated prisoner must show deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). In order to prove such a claim, Deal

3

"must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006). A prisoner is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06.

As for defendant Leggett, Deal has not alleged a claim for deliberate indifference to a serious medical need. Deal alleges that Leggett declined to renew his Oxycodone prescription in August 2008, and that he thereafter fell on several occasion when walking. Am. Compl. at 9–10. Deal does not allege whether Leggett was involved in any treatment other than denying him Oxycodone on one occasion. Moreover, it is clear that Deal was receiving continued medical attention at that time, and had hip surgery approximately four months later. Thus, Deal has failed to state a claim for deliberate indifference against Leggett. See, e.g., Russell, 528 F.2d at 319; Starling v. United States, 664 F. Supp. 2d 558, 569–70 (D.S.C. 2009).

Next, defendant Micklos seeks dismissal on the ground that Deal failed to effect proper service of the complaint and summons upon him. Proper service of process (or waiver of service under Fed. R. Civ. P. 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Under Rule 4(m), if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court must dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, unless the plaintiff can show good cause. Fed. R. Civ. P. 4(m). Rule 4(e)(1) permits a plaintiff to serve individual defendants "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4(e)(1). The

4

North Carolina Rules of Civil Procedure permit service "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c). A plaintiff may deliver the documents to defendant's place of employment. See id.; Moore v. Cox, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004); Waller v. Butkovich, 584 F. Supp. 909, 926 (M.D.N.C. 1984). When a defendant challenges service by certified mail, a plaintiff must submit an affidavit stating that a copy of the summons and complaint was mailed and attach the return receipt indicating that service was received in accordance with N.C. Gen. Stat. § 1-75.10(4). See Moore, 341 F. Supp. 2d. at 573. If the attached return receipt was signed by a person other than the addressee, North Carolina presumes "that the person who received the mail . . . and signed the receipt was an agent of the addressee authorized by appointment or by law to be served or to accept service of process." N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2); see Moore, 341 F. Supp. 2d. at 573; Fender v. Deaton, 130 N.C. App. 657, 662, 503 S.E.2d 707, 710 (1998). A party may rebut this presumption of valid service with "affidavits of more than one person showing unequivocally that proper service was not made upon the person of the defendant." Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996); see Moore, 341 F. Supp. 2d at 573.

Micklos has not shown that service was improper. The United States Marshal filed a return of service on Micklos indicating service on him at his place of employment via certified mail, return receipt requested. The attached return receipt shows that the delivery was accepted by "L.J. Johnson," who, under North Carolina law, is presumed to be Micklos's agent for service of process. Micklos has presented only his affidavit challenging the service, not the "affidavits of more than one person[.]" Grimsley, 342 N.C. at 545, 467 S.E.2d at 94; see Moore, 341 F. Supp. 2d at 573. Because Micklos has not overcome the presumption of valid service under North Carolina law, the

5

court denies his motion to dismiss without prejudice to the extent that it is based on improper service.

Micklos also contends that dismissal is appropriate because Deal has failed to sufficiently allege a claim for deliberate indifference to a serious medical need. Taking the allegations of the complaint in the light most favorable to Deal, defendant Micklos stopped Deal's pain medication prescription, and while he offered to put the plaintiff back on his pain medication any time the pain was too much to bear, Micklos ignored Deal's repeated "sick-calls and . . . grievances to be put back on his medication . . . for 6 months." Am. Compl. at 18. Deal's allegations state a claim for deliberate indifference to a serious medical need against Micklos. See, e.g., Harden v. Green, 27 F. App'x. 173, 178 (4th Cir. 2001) (per curiam) (unpublished). Accordingly, to the extent Micklos seeks dismissal for failure to state a claim, the court denies his motion.

Next, defendant Head Medical Director of the URB seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that it "is a non-existent entity without capacity to be sued and without standing before this Court . . . ." Mem. Supp. URB Mot. Dismiss at 5. In support, this defendant has submitted the affidavit of Paula Y. Smith, the Director of Health Services for DOC. Smith states "[t]here is no such entity within DOC as a [URB] . . . . There are only individual doctors and nurses employed by, or under contract to, DOC, who perform Utilization Review ("UR") functions. . . . Individual doctors and nurses may or may not make their UR decisions in consultation with other doctors and nurses, but their decisions are not the decisions of a Board, because there is no Board." Smith Aff. ¶ 3.

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the

6

evidence." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993). Deal has failed to meet his burden, and the court dismisses this defendant from the action. See Diaz v. Lee, 104 F. App'x 321, 322 n.* (4th Cir. 2004) (per curiam) (unpublished) (noting that URB "is not a 'person' under § 1983").

Finally, defendant Padgett seeks dismissal pursuant to Federal Rule of Civil Procedure 12(c), on the ground that any claim against her is untimely. The same standard applies to a motion for judgment on the pleadings under Rule 12(c) as for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).

Congress has not adopted a specific statute of limitations for actions brought under 42 U.S.C. § 1983. Instead, the analogous state statute of limitations applies. See, e.g., Burnett v. Grattan, 468 U.S. 42, 48–49 (1984); Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Specifically, the state statute of limitations for personal injury actions governs claims brought under 42 U.S.C. § 1983. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 276 (1985), superseded by statute on other grounds, 28 U.S.C. § 1658(a), as recognized in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377–81 (2004). North Carolina has a three-year statute of limitations for personal injury actions. N.C. Gen. Stat. § 1-52(5). Thus, North Carolina's three-year statute of limitations governs Deal's claims. See, e.g., Franks v. Ross, 313 F.3d 184, 194 (4th Cir. 2002); Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996); Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161–62 & n.2 (4th Cir. 1991).

Although the limitations period for claims brought under section 1983 is borrowed from state law, the time for accrual of an action is a question of federal law. See, e.g., Wallace, 549 U.S. at 388; Brooks, 85 F.3d at 181. A claim accrues when the plaintiff knows or has reason to know of

7

the injury which is the basis of the action. See, e.g., Wallace, 549 U.S. at 391; Nasim, 64 F.3d at 955. The complaint does not indicate when Deal's claim against Padgett arose; however, he filed a grievance against her on May 4, 2005, complaining that she took his wheelchair from him. Padgett Answ., Ex. A at 2. Deal exhausted his administrative remedies as to this claim on July 7, 2005, when the DOC issued its Step Three ruling denying the claim. Id. at 1. Deal did not file this action until April 8, 2009. Thus, Deal's claim against Padgett is untimely and is dismissed.

III.

For the reasons stated, the court GRANTS the motions to dismiss of defendants Leggett [D.E. 25], Head Medical Director of the DOC URB [D.E. 32], and Padgett [D.E. 35]. The court DENIES WITHOUT PREJUDICE the motion to dismiss of defendant Micklos [D.E. 27] to the extent it seeks dismissal for failure to effect service, and DENIES the motion to the extent it seeks dismissal for failure to state a claim.

SO ORDERED. This 2 day of February 2011.

JAMES C. DEVER III
United States District Judge